IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAWNTWAI HUBBARD, | ) | Case No. 3:15 cv 767 |
| | ) | |
| Petitioner | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| ED SHELDON, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.    Introduction

Dawntwai Hubbard filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 on April 20, 2015.[1]  Pursuant to Local Rule 72.2, this matter was referred for a report and recommendation to former Magistrate Judge Greg White on April 20, 2015.  Following Magistrate Judge White's retirement, this matter was referred to the undersigned for report and recommendation.[2]  Respondent filed a Return of Writ on July 10, 2015, opposing Hubbard's petition.[3]  Hubbard filed a response to the return of writ on August 7, 2015.[4]  The court has considered each of the foregoing filings and the attendant state court records.

For the reasons set forth below, it is recommended that the petition for writ of habeas

---

[1] ECF Doc. No. 1
[2] March 29, 2016, Minute Order under the authority of General Order 2016-3.
[3] ECF Doc. No. 4
[4] ECF Doc. No. 5

corpus be DENIED.

## II.     Factual Background

The federal habeas statute invoked in this case, 28 U.S.C. § 2254(e)(1), provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The Ohio Court of Appeals for the Tenth Appellate District set forth the following facts

on direct appeal:

{¶2}  On September 27, 2010, the State indicted defendant on one count of aggravated murder, an unclassified felony, one count of attempted murder, a first degree felony, one count of murder, an unclassified felony, and one count of felonious assault, a second degree felony, all with firearm specifications in accordance with R.C. 2941.145.  The events giving rise to the indictment occurred on September 18, 2010, on the near east side of Columbus, Ohio.

{¶3}  Throughout the daytime hours on September 18, 2010, defendant's 19-year-old neighbor, Ravenna Bronaugh, and her group of friends had numerous verbal and physical altercations with defendant's 14-year-old daughter and her group of friends.  Defendant and his daughter lived at 422 Morrison Avenue, while Bronaugh lived at 396 Morrison Avenue, five houses north from defendant's house on the same side of the street.  The police responded to several calls from the area throughout the day to break up the fighting between the two groups.  As a neighbor explained, the day "appear[ed] to be a series of escalat[ing] arguments and tempers were getting hotter and hotter."

{¶4}  Around 8:00 p.m., the fighting between the two groups had died down, defendant's daughter and her friends were inside defendant's home, and Bronaugh and her friends were on Bronaugh's front porch.  At that time, Lavada McCurdy, Bronaugh's good friend, and Bronaugh left the group at 396 Morrison Avenue and walked down the street to defendant's house. McCurdy picked up a cement block on the walk and, while standing in defendant's front yard, she "threw it at [defendant's front] window and busted it."  The group standing on Bronaugh's porch walked out to the sidewalk to see what had happened. McCurdy and Bronaugh started to walk back to 396 Morrison Avenue, stopping to talk to another individual on the street, when suddenly they "started hearing shots."

{¶5}  The witnesses from 396 Morrison Avenue explained that, after McCurdy and Bronaugh broke defendant's window, defendant came out "on the porch and

2

start[ed] shooting." McCurdy stated that, as she was running, she turned around and "noticed it was [defendant]" shooting. Another witness explained that the shots were coming "down Morrison from [the direction] which [McCurdy] and [Bronaugh] were walking from." As the shots were being fired, Teddy McGrapth and Candace Keys, who had arrived at 396 Morrison Avenue minutes before the shooting, started yelling that they had been shot. McGrapth walked back from the sidewalk to the steps in front of 396 Morrison Avenue, sat down and started taking "deep breathe[s] and blood started coming out." McGrapth died from the gunshot wound to his torso.

{¶6} There were several individuals inside defendant's house when the cement block came crashing through the window. The witnesses from inside defendant's house testified to hearing two gun shots either immediately before or immediately after the brick came through the window. Other witnesses for the State, however, testified that the only gunshots they heard that evening were the shots fired from defendant's gun. Defendant's daughter testified that, after she heard the gunshots and the cement block crash through the window, her father entered from the "rear of the house" and instructed everyone to "go upstairs." Defendant's daughter "got on the ground and * * * climbed up the stairs," and then heard gunshots, approximately "four or five."

{¶7} Defendant testified at trial. He explained that when he returned home around 8:00 p.m. from a brief outing with a friend, he saw a "group of people carousing and gathering," on Morrison Avenue. Defendant stated that he entered his house through the back door, heard approximately two gunshots followed by a terrifying crash, retrieved the gun which he had placed behind the mantel earlier in the day, and walked out onto his front porch. Defendant saw people approaching "from [his] yard coming closer" and, because he "didn't want to harm no one," he grabbed the pillar on the side of his porch, and shot "to the side and down to warn them, back, just back up." Defendant explained that he fired his gun "down towards the ground" in the direction of the abandoned house immediately north from his house and in the vicinity of a green trash can sitting in front of the abandoned house. Defendant explained that he did not intend to kill or harm anyone when he shot his gun.

{¶8} Allison Fife, defendant's neighbor at 430 Morrison Avenue, witnessed the shooting. Fife explained that at approximately 8:00 p.m. she saw a group of people standing down the street from her house and saw someone from the group run towards defendant's house and throw something that "went through the window." About a minute after the window broke, defendant walked out onto his front porch, grabbed a hold of the brick pillar, and fired four or five shots in rapid succession while pointing his gun "[t]owards the group" standing down the street. Fife, and other witnesses from 396 Morrison Avenue, stated that when defendant fired his gun, there was no one standing in front of his house.

3

{¶9}  Police arrived shortly after the shooting. Detective Gregory Sheppard stated that "[s]everal of the witnesses stated that the person that actually committed the shooting was [defendant] and that he lived at 422 Morrison."  Police entered defendant's home and, as they proceeded to the second floor of the house, they heard "like steps or some creaking in another level of the house" and told whoever was upstairs to come down.  Defendant came down the stairs and officers noted that, while defendant was "sweating from his forehead," his shirt "was very dry" causing the officers to "believe that maybe [defendant] just changed his shirt or something like that."  Witnesses from the scene told officers that defendant had "ran and changed his clothes," as defendant wore a white "wife beater" undershirt during the day, but had on a yellow T-shirt when police found him.

{¶10}  Police recovered five spent Winchester 45-automatic shell casings on and around defendant's front porch.  Inside defendant's house, in a large box underneath a bed, police found a "handgun and some ammunition along with a gun box."  The ammunition was Winchester 45-automatic ammunition.  The gun box was for a Hi-Point firearm, and contained a receipt from Vance's gun shop, evidencing the sale of a Hi-Point 45-automatic firearm to defendant on October 12, 2007. The gun was not inside the gun box, rather it was "stuck down in" the larger box.  The magazine had eight live rounds in it.

{¶11}  Forensic testing revealed that the five spent shell casings from defendant's front porch were fired from the Hi-Point firearm. The bullet which caused McGrath's death was also fired from the Hi-Point firearm. Samples taken from defendant's hands on the night of the incident revealed gunshot primer residue, indicating that defendant had fired a gun that day.

{¶12}  Defendant's trial concluded on October 4, 2011. The jury found defendant guilty of attempted murder and felonious assault relative to Keys, found defendant guilty of murder regarding McGrath, and found defendant guilty of the firearm specifications for each crime.  The jury was unable to reach a verdict on the aggravated homicide charge and a *nolle prosequi* was entered as to Count 1 of the indictment.  The court sentenced defendant to a prison term of 15 years to life on the murder charge, 7 years on the attempted murder charge, and 3 years on each firearm specification.  The court ordered that the sentences be served consecutively, for a total prison term of 28 years to life.[5]

---

[5] ECF Doc. No. 4-19

### III.    Relevant State Procedural History

###     A.    State Conviction

In September 2010, Hubbard was indicted by a grand jury of the Franklin County Court of Common Pleas of one count of aggravated murder in violation of O.R.C. § 2903.01; one count of attempted murder in violation of O.R.C. § 2923.02 and §2903.02; one count of murder in violation of O.R.C. § 2903.02; and one count of felonious assault in violation of O.R.C. § 2903.11.[6]  A firearm specification was attached to each count of the indictment.[7]

On May 26, 2011, Hubbard entered a plea of not guilty by reason of temporary insanity due to diabetic hypoglycemia.[8]  Also on May 26, 2011, petitioner filed three motions to suppress arguing that he was unlawfully stopped, detained and searched without a warrant; that his residence was unlawfully searched without a warrant; and that any statements he may have made as a result of the unlawful search of his person and/or residence should be suppressed.[9]  On June 6, 2011, petitioner filed a memorandum in support of his motions *in limine*.[10]  On July 19, 2011, the trial court ordered petitioner to submit to an evaluation of his mental condition at the time of the crime.[11]  On September 26, 2011, Hubbard moved to dismiss "duplicitous [*sic*]" counts of the indictment.[12]

A jury trial was commenced on September 26, 2011.[13]  On October 4, 2011, the jury found Hubbard guilty of attempted murder as charged in Count Two; murder as charged in

---

[6] ECF Doc. No. 4-3
[7] Id.
[8] ECF Doc. No. 4-4
[9] ECF Doc. No. 4-5, 4-6 and 4-7
[10] ECF Doc. No. 4-8
[11] ECF Doc. No. 4-9
[12] ECF Doc. 4-10
[13] ECF Doc. 4-13

Count Three; and felonious assault as charged in Count Four.[14]  The jury reached an impasse as to Count One, and the prosecuting attorneys submitted a *nolle prosequi* entry, which the court filed on October 12, 2011. [15]

The court conducted a sentencing hearing on October 4, 2011.[16]  Hubbard was sentenced to an aggregate term of twenty-five (25) years to life in prison, plus 5 years of post-release control.[17]

### B.    Direct Appeal

On November 1, 2011, petitioner's attorney filed a timely notice of appeal with the Tenth District Court of Appeals.[18]  In his appeal, Hubbard raises the following ten assignments of error:

1.  Hubbard's convictions were against the manifest weight of the evidence.

2.  Hubbard was denied due process of law and a fair trial, when the trial court failed to instruct the jury regarding the affirmative defense of 'self-defense and/or defense of another' including a 'Castle Doctrine' instruction (effective September 9, 2008), because this jury instruction was appropriate and required, in light of both 'sufficiency' and 'manifest' weight of evidence produced at trial.

3.  Hubbard was denied due process of law and a fair trial, when the trial court failed to instruct the jury regarding "self defense or defense of another," including a statutory required "Castle Doctrine" instruction (after September, 2008), when predicated upon this trial evidence, to wit: During the evening of September 18, 2010, Hubbard, in order to protect persons under attack in his home, from apparently armed would-be home invaders, rapidly fired five warning shots from his front porch, to dissuade and repel those invaders, seconds after they fired two shots in front of his home, and hurled a concrete block through his front porch window; however, one or more shot(s) he fired downward into the ground of an abandoned lot north of his home, strayed and/or ricocheted, struck and killed an unseen victim, Mr. McGrapth and may have also hit unseen victim, Ms. Keys' foot, while both were located in close

---

[14] ECF Doc. No. 4-11
[15] ECF Doc. No. 4-12
[16] ECF Doc. No. 4-13
[17] Id.
[18] ECF Doc. No. 4-14

proximity to each other, out near the darkened street, more than sixty (60) yards northwest of Hubbard's porch.

4. Hubbard was denied due process of law and a fair trial, when the trial court failed to instruct upon the doctrine of "transferred intent," under sufficient weight of evidence at trial, that one (or more) of five gunshots Hubbard fired north, in a downward direction toward an abandoned lot next to his home accidentally ricocheted and/or strayed, striking unseen individuals standing in close proximity to each other in the dark, near the street, more than sixty (60) yards northwest of his front porch.

5. Hubbard was denied due process of law and a fair trial, when the trial court, after conclusion of the evidence established at trial, failed to instruct the jury regarding the lesser included offenses of (1) voluntary manslaughter, (2) involuntary manslaughter, (3) reckless homicide, (4) negligent homicide, and (5) aggravated assault.

6. Hubbard was denied due process of law and a fair trial when the trial court failed to instruct the jury that they should consider whether or not evidence of daylight escalation of street violence outside Hubbard's home, evening gunshots heard outside his home and a hurled concrete block crashing through the front window of his home, was relevant to the jury's ultimate determination of whether Hubbard's claim of "self-defense and/or defense of others" and/or a "Castle Doctrine" presumption, had been rebutted by greater weight of evidence offered by the State of Ohio.

7. The trial court erred in denying Hubbard's motion for judgment of acquittal (Ohio Criminal Rule 29) at the conclusion of the State's case, since manifest weight of the evidence established that McGrapth's Homicide was accidental, and that the State's failure to compel Candace Keys to testify with respect to the State's burden of proof regarding Counts Two, Three and Four of the Indictment, all of which were predicated upon the State's underlying establishment of evidence that Hubbard knowingly committed felonious assault upon Keys, thus deprived Hubbard of his constitutional right, to confront and cross-examine his accuser; face to face and in open court, regarding the exact nature, extent and cause of Keys' alleged "injury", and regarding her reasons for traveling with McGrapth from their west side apartments into an east side neighborhood she knew was filled with street gang violence and guns.

8. Hubbard was denied due process of law and a fair trial, when the trial court erroneously permitted the trial prosecutor to engage in prosecutorial misconduct during his closing argument by usurping the trial court's sole function to instruct the jury on the law which the 'should and/or should-not' apply to findings of fact, in determining the weight or sufficiency of evidence, to reach their verdicts regarding the indictment.

9. Hubbard was denied due process of law and a fair trial, when the trial court
erroneously provided the jury with redacted written copies of the court's
orally delivered jury instructions and failed to advise the jury, upon reported
inability to reach a verdict, that all further requests for jury instruction were,
because of the court's previous instruction prohibiting all written jury notes, to
be strictly limited to oral jury reinstruction from the court.

10. The trial court erred in its imposition of sentence, upon the convictions.

On May 31, 2012, Hubbard filed an amended brief containing the same ten assignments
of error.[19]  On June 22, 2012, the state filed a brief in response.[20]  On June 27, 2013, the Tenth
District Court of Appeals overruled assignments of error 1through9 in Hubbard's brief and
sustained in part, Hubbard's tenth assignment of error.[21]  The court of appeals remanded the case
for resentencing with instructions that the trial court properly consider whether consecutive
sentences were appropriate under R.C. 2929.14(C)(4).[22]

On August 12, 2013, Hubbard filed a *pro se,* timely notice of appeal in the Ohio Supreme
Court.[23]  Hubbard's memorandum in support of jurisdiction asserted the following propositions
of law:

1. A trier of fact loses its way in weighing reasonable inferences and resolving
conflicts in evidence, thereby creating a manifest miscarriage of justice in
violation of a multitude of constitutional provisions, when the trier of fact
convicts for murder, attempted murder and felonious assault, when the
evidence is clearly against the manifest weight of the evidence.

2. A murder and attempted murder conviction is based on insufficient evidence in
violation of a defendant's constitutional rights to due process, a fair trial, to
have the state prove all elements of the offense beyond a reasonable doubt
when, at most, the state only presented evidence sufficient to sustain a
conviction for reckless homicide.

3. A defendant is denied his right to confrontation guaranteed by the 6th

---

[19] ECF Doc. No 4-17
[20] ECF Doc. No. 4-18
[21] ECF Doc. No. 4-19
[22] Id.
[23] ECF Doc. No. 4-20

Amendment, when he is convicted of attempted murder and the alleged victim is not made available to testify at trial, and defendant never had a prior opportunity to cross-examine the alleged victim under oath.

4.  A defendant is denied effective assistance of counsel at trial when his trial counsel fails to request jury instructions for the lesser included offense of involuntary manslaughter and reckless homicide when trial evidence suggests that he was entitled to those instructions.

5.  A defendant is denied due process of law in violation of his 5th and 14th Amendment Constitutional rights when the trial court fails to instruct the jury on the lesser included charges of involuntary manslaughter and reckless homicide, and the evidence presented at trial suggested that defendant was entitled to those instructions.[24]

The Ohio Supreme Court declined to accept jurisdiction on December 4, 2013.[25]

### C.     Motion to Reopen Direct Appeal

On September 26, 2013, while his attempted Supreme Court appeal was pending,

Hubbard filed a *pro se* application to reopen his direct appeal pursuant to Ohio App. R. 26(B).[26]

In his application, Hubbard asserted the following assignments of error:

1.  Defendant-Appellant was denied his Sixth Amendment right to confront his accuser.

2.  Violation of Hubbard's Sixth Amendment right to effective assistance of counsel.  Hubbard argues that his trial counsel was ineffective by failing to request jury instructions on lesser included offenses.

3.  Hubbard was denied due process of law in violation of his Fifth and Fourteenth Amendment rights when the trial court failed to instruct the jury on the lesser included charges of involuntary manslaughter and reckless homicide, and the evidence presented at trial suggested that defendant was entitled to those instructions.[27]

---

[24] ECF Doc. No. 4-21
[25] ECF Doc. No. 4-23
[26] ECF Doc. No. 4-26
[27] ECF Doc. No. 4-26

The state filed a memorandum in opposition to the application for reopening[28] and the court denied the application for reopening in a decision dated January 16, 2014. [29]  The court of appeals held that the application was untimely and that defendant had failed to show good cause for the failure to file a timely application.[30]  The court of appeals further opined that Hubbard had failed to establish that he was denied effective assistance of appellate counsel and that his application lacked merit.[31]

On February 25, 2014, Hubbard, acting *pro se,* timely appealed the denial of his application to reopen appeal to the Ohio Supreme Court.[32]   In his memorandum in support of jurisdiction, Hubbard asserted the following propositions of law:

1. A defendant is denied his right to effective assistance of counsel in violation of Article I, Section 10 of the Ohio Constitution and the Sixth Amendment of the United States Constitution when appellate attorney fails to raise key assignments of error that prejudiced defendant, and there is a reasonable probability that, but for those errors, the result of the appeal would have been different.

2. A defendant is denied his right to confrontation guaranteed by the Sixth Amendment, when he is convicted of attempted murder and the alleged victim is not made available to testify at trial, and defendant never had a prior opportunity to cross-examine the alleged victim under oath.

3. A defendant is denied effective assistance of counsel at trial when his trial counsel fails to request jury instructions for the lesser included offense of involuntary manslaughter and reckless homicide when trial evidence suggests that he was entitled to those instructions.

4. A defendant is denied due process of law in violation of his Fifth and Fourteenth Amendment Constitutional rights when the trial court fails to instruct the jury on the lesser included charges of involuntary manslaughter and reckless homicide, and the evidence presented at trial suggested that defendant was entitled to those instructions.[33]

---

[28] ECF Doc. No. 4-27
[29] ECF Doc. No. 4-28
[30] Id.
[31] Id.
[32] ECF Doc. No. 4-30
[33] ECF Doc. No. 4-32

On April 23, 2014, the Ohio Supreme court declined to accept jurisdiction of the appeal of Hubbard's App. R. 26(B) application.[34]

### D.    2014 Resentencing

On April 4, 2014, the trial court resentenced Hubbard, following the court of appeals remand, imposing an increased aggregate term of incarceration of twenty-eight years to life in prison.[35]   There was no direct appeal following the resentencing.

## IV.    Federal Habeas Petition

Hubbard signed the instant *pro se* petition for habeas corpus relief on April 14, 2015, and it was docketed with the court on April 20, 2015.[36]  On July 10, 2015, respondent filed a return of writ opposing the petition.[37]  Hubbard filed a response to respondent's return of writ on August 7, 2015.[38]

In his petition, Hubbard asserts four grounds for relief:

**GROUND ONE:**  Sixth Amendment Right to Cross-Examine his Accuser

**Ground One Supporting Facts:**  In this instance the defendant was accused of allegedly shooting a girl in the foot, however the sole living witness/alleged victim never took the stand to verify that she had been shot, nor did the state produce a doctor's report stating that she was shot, nor did the state produce DNA stating that, in fact, it was the witness/alleged victim's blood on the show, nor did the state produce a sworn statement from the victim.  All the state produced was a bloody shoe.

**GROUND TWO**:  Sixth Amendment Right to Effective Assistance of Counsel

**Ground Two Supporting Facts**:  The defendant's counsel never subpoenaed the

---

[34] ECF Doc. No. 4-33
[35] ECF Doc. No. 4-24
[36] ECF Doc. No. 1
[37] ECF Doc. No. 4
[38] ECF Doc. No. 5

11

state's sole living witness/alleged victim to take the stand at Mr. Hubbard's trial to learn the extent of her injury, or if she was even injured at all.  Nor did trial counsel check the credentials of an expert believed to be a ballistics expert, when, in fact, after research done by defendant's family this expert was an environmental scientist.

**GROUND THREE**: A Violation of Defendant's 5th & 14th Amendment Rights occurred when the Trial Court Failed to Instruct the Jury on a Lesser Included Offense

**Ground Three Supporting Facts**:  The trial judge gave the jury a set of instructions for the defendant's indictment, but the evidence suggested that the defendant was entitled to a lesser included offense instruction.  In Fact, the Tenth District Court of Appeals asked counsel why a lesser included offense such as reckless homicide was not raised at the end of trial.

**GROUND FOUR**:  The Prosecutor held back information that would have impeached his sole living witness/alleged victim.

**Ground Four Supporting Facts**:  The only fact that I have to support this ground is that court records show that in a past, but recent case, the prosecutor that was assigned to the case, had prosecuted the state's sole living witness/alleged victim on a gun charge not long before the defendant's trial started.

Hubbard has not made a request for the appointment of counsel or requested an evidentiary hearing.

## V.    Analysis

### A.    Jurisdiction

28 U.S.C. § 2254(a) authorizes the court to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court."  A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him" 28 U.S.C. § 2241(d).  Defendant was sentenced by the Court of Common Pleas of Franklin County, Ohio.  He is in custody at the Allen Correctional Institution in Lima, Ohio, in Allen County, which is within this court's geographic jurisdiction.

Consequently, this court has jurisdiction over petitioner's § 2254 petition.

### B.      Ground One

In Ground One, Hubbard asserts that his Sixth Amendment right to cross-examine his accuser was violated because Candace Keys did not testify at trial.[39]  Respondent argues that Ground One was not presented on direct appeal and was thereby waived.  Respondent contends that Hubbard first raised this "stand-alone" confrontation clause argument on his appeal to the Ohio Supreme Court and that, by failing to raise it in his direct appeal, he procedurally defaulted on this ground.[40]

### 1.      Exhaustion/Procedural Default

Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition. See *Lambrix v. Singletary*, 520 U.S. 518, 524, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997).  The procedural default rule is related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition. See 28 U.S.C. § 2254(b), (c).  Both rules have the purpose of allowing state courts the opportunity to address federal constitutional claims "in the first instance" before the claims are raised in federal habeas proceedings. *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

Under the procedural default rule, a federal court acting on a state prisoner's habeas petition will not review a question of federal law if the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is "independent of the federal question and is adequate to support the judgment." *Coleman,* 501 U.S. at 729-30.  The rule "has its

---

[39] ECF Doc. No. 1
[40] ECF Doc. No. 4, pp. 20-21

historical and theoretical basis in the 'adequate and independent state ground' doctrine" that governs direct review of state court cases by the United States Supreme Court. *Harris v. Reed,* 489 U.S. 255, 260, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) (citing *Wainwright v. Sykes*, 433 U.S. 72, 78-79, 81-82, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)). "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court." *Coleman,* 501 U.S. at 732.

"A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

Here, respondent argues that Ground One of Hubbard's petition was procedurally defaulted because he failed to raise it on direct appeal, and the Ohio Supreme Court enforced a rule from *State v. Sanders,* 92 Ohio St.3d 245 (2001) which provides that an issue is waived if not raised in the court of appeals. Respondent's argument fails for several reasons. First, the Ohio Supreme Court did not clearly enforce the procedural rule announced in *Sanders* when it declined jurisdiction over Hubbard's appeal. The Ohio Supreme Court's decision states only that it "declines jurisdiction to consider the appeal." [41]

Second, Hubbard actually did raise the Confrontation Clause issue on direct appeal. Assignment of Error No. 7 of Hubbard's direct appeal contains the following assertion:

---

[41] ECF Doc. No. 4-23

14

The trial court erred in denying Hubbard's motion for judgment of acquittal (Ohio Criminal Rule 29) at the conclusion of the State's case, since manifest weight of the evidence established that McGrapth's Homicide was accidental, and that the State's failure to compel Candace Keys to testify with respect to the State's burden of proof upon the State's underlying establishment of evidence that Hubbard knowingly committed felonious assault upon Keys, thus deprived Hubbard of his constitutional right to confront and cross examine his accuser; face to face and in open court regarding the exact nature, extent and cause of Keys' alleged "injury", and regarding her reasons for traveling with McGrapth from their west side apartments into an east side neighborhood she knew was filled with street gang violence and guns.[42]

For purposes of the present habeas corpus review, the court must determine whether Hubbard's confrontation clause argument was fairly presented to the state courts.  Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not "fairly presented" to the state courts.  A claim may only be considered "fairly presented" if the petitioner asserted both a factual and legal basis for his claim in state court.  Although general allegations of the denial of a "fair trial" or "due process" have been held insufficient to "fairly present" federal constitutional claims, a petitioner need not recite "book and verse on the federal constitution."  *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) citing *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987)).

Here, respondent acknowledges that Hubbard raised the confrontation clause argument in

---

[42] ECF Doc. No. 4-17

his appeal to the Ohio Supreme Court even though the language he employed was not  dissimilar to the language he used in his direct appeal.  Nonetheless, respondent argues that Hubbard failed to raise his Confrontation Clause argument on direct appeal.  Respondent's contention is not supported by a review of Hubbard's direct appeal.  The undersigned concludes and recommends that the court find that Hubbard fairly presented this argument on direct appeal. He included a Confrontation Clause argument in Assignment of Error No. 7, phrased this claim in terms of constitutional law, and alleged facts well within the mainstream of constitutional law.  This finding is further strengthened by the fact that the court of appeals squarely addressed Hubbard's confrontation clause argument.  The decision of the court of appeals contains the following discussion:

B.  *Confrontation Clause*

Defendant also asserts under his seventh assignment of error that the State deprived him of his constitutional right to confront the witnesses against him by failing to compel Keys to testify.  Defendant contends that, although Keys was "subpoenaed and served by both sides in this case," because the State did not call her to testify, she was "'unavailable' for the Defense to cross examine." (Appellant's brief, 26.)

The Sixth Amendment to the United States Constitution, in its Confrontation Clause, provides that: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."  The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination."  *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).  Thus, if the hearsay evidence sought to be admitted comprises testimony from an absent witness, who cannot be cross-examined or observed face-to-face by the trier of fact, the Confrontation Clause limits the admission of that hearsay evidence. *State v. Keairns*, 9 Ohio St.3d 228, 229, 9 Ohio B. 569, 460 N.E.2d 245 (1984).  The Confrontation Clause does not apply to nontestimonial hearsay. *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010 Ohio 1881, ¶ 24, citing Crawford at 68.

Defendant contends that Keys' "'out of court assertions' were continuously allowed into the trial record, via illicit hearsay from other witnesses." (Appellant's brief, 27.)  Defendant does not provide a citation to the transcript to support this

16

> assertion, does not indicate what hearsay statements were allowed into the record,
> and fails to allege that such statements were testimonial.  Because the State did
> not seek to introduce testimonial hearsay statements from Keys, the State did not
> violate defendant's Sixth Amendment right to confront the witnesses against him.
> Defendant's contentions regarding the Confrontation Clause lack merit.

Hubbard fairly presented his Sixth Amendment confrontation clause argument on direct appeal in state court and respondent's argument to the contrary is not well taken.[43]  Hubbard has preserved this argument for federal habeas review.

Arguably, the court of appeals overruled Hubbard's confrontation clause argument, in part, because he failed to cite to the portions of the transcript or record to support his argument. Such a ruling could be construed as the enforcement of a state procedural rule under the *Maupin* test and Ground One could have procedurally defaulted on that basis.  However, respondent's procedural default argument was not based on the court of appeals' decision.  Rather, respondent argued that Hubbard entirely failed to raise a "stand-alone" confrontation argument on direct appeal.  The court is not required to *sua sponte* raise an alternative procedural default issue that was not raised by respondent.  *See Trest v. Cain,* 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 244 (1997).  Moreover, where the merits of a claim "present a more straightforward ground for decision," the court may consider the merits of the claim first and then reach the procedural default question only if necessary. See *Arias v. Hudson,* 589 F.3d 315, 316 (6th Cir. 2009), citing *Lambrix v. Singletary,* 520 U.S. 518, 523, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997).  For these reasons, the undersigned has also considered the merits of Hubbard's Confrontation Clause argument asserted in Ground One of his petition.

---

[43] The Ohio Court of Appeals also acknowledged in its ruling denying Hubbard's application to reopen his direct appeal that the direct appeal had raised a Confrontation Clause issue: "As relevant herein, defendant asserted that . . . (2) that the state violated his constitutional right to confront witnesses against him.  (EFC Doc. No. 4-28, Page ID# 414)

## 2.    Merits of Defendant's Confrontation Clause Violation Claim

28 U.S.C. § 2254 allows a person in state custody "in violation of the Constitution or laws or treaties of the United States" to be granted relief.  28 U.S.C. § 2254(a).  Section 2254 allows the court to grant habeas corpus relief only when the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.28 U.S.C. § 2254(d). The Supreme Court has made a distinction between the "contrary to" and "unreasonable application of" provisions of § 2254(d)(1).

The Supreme Court has made a distinction between the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The factual determinations of the state court will be presumed to be correct unless the petitioner can show by "clear and convincing evidence" that the factual determination was erroneous. 28 U.S.C. § 2254(e)(1).

Hubbard argues that the Confrontation Clause was violated because he was unable to cross-examine Candace Keys, the alleged victim of the attempted murder charge of which he was convicted.  Candace Keys did not testify at Hubbard's trial.  However, Hubbard argues that other witnesses improperly testified regarding statements made by Ms. Keys, whom he was not given an opportunity to confront.  Hubbard also complains that the state did not produce a

doctor's report, DNA evidence, or a sworn statement from the alleged victim.[44]

The Sixth Amendment Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to cross-examination is the primary right secured by this clause and "is critical for ensuring the integrity of the fact finding process." *Kentucky v. Stincer*, 482 U.S. 730, 736, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987).  The Confrontation Clause also bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

In *Crawford,* the Supreme Court "introduced a fundamental re-conception of the Confrontation Clause." *United States v. Cromer*, 389 F.3d 662, 671(6th Cir. Mich. 2004)  The Court introduced a distinction between testimonial and nontestimonial statements for Confrontation Clause purposes: "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'" *Id., citing* Crawford, 124 S. Ct. at 1370.  The Court based this distinction on the word "witnesses" in the Clause, which refers to those who "bear testimony." *Id.* at 1364 (quoting 1 N. WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828)).  Ultimately, the Court's holding was that testimonial, out-of-court statements offered against the accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine the declarant. *Id*. at 1369, 1374.  While the Court declined to "spell out a comprehensive definition of 'testimonial,'" it stated that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police

---

[44] ECF Doc. No. 1

interrogations." *Id.* at 1374.

While the Crawford Court did not provide a comprehensive definition of "testimonial," it did provide some guidance in the matter.  For example, the Court noted that "testimony" may be defined as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford* at 1364 (quoting 1 N. WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828)).  The Court emphasized that, "an accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id*. at 1364.  The Court mentioned various formulations that had been proposed to define the class of "testimonial" statements but found no need to choose among those formulations since "statements taken by police officers in the course of interrogations," such as the defendant's wife's tape-recorded statement, are "testimonial under even a narrow standard." *Id*. at 1364 ("Police interrogations bear a striking resemblance to examinations by justices of the peace in England.").

In *Cromer,* the Sixth Circuit Court of Appeals further considered the definition of "testimonial" statements for purposes of Sixth Amendment review.  In so doing, the *Cromer* court looked to the sources upon which the *Crawford* Court relied in framing its re-definition of the Confrontation Clause.   The Sixth Circuit found that the definition of "testimonial" proposed by Professor Richard Friedman of University of Michigan Law School was well-reasoned and wholly consistent with the purpose behind the Confrontation Clause.  Professor Friedman's definition of "testimonial" would include any statement "made in circumstances in which a reasonable person would realize that it likely would be used in investigation or prosecution of a crime." RICHARD D. FRIEDMAN & BRIDGET MCCORMACK, DIAL-IN TESTIMONY, 150 U. Pa. L. Rev. 1171, 1240-41 (2002).  Based on his proposed definition, Friedman offered five rules of

thumb:

> A statement made knowingly to the authorities that describes criminal activity is almost always testimonial. A statement made by a person claiming to be the victim of a crime and describing the crime is usually testimonial, whether made to the authorities or not.  If, in the case of a crime committed over a short period of time, a statement is made before the crime is committed, it almost certainly is not testimonial. A statement made by one participant in a criminal enterprise to another, intended to further the enterprise, is not testimonial. And neither is a statement made in the course of going about one's ordinary business, made before the criminal act has occurred or with no recognition that it relates to criminal activity.

Richard D. Friedman, CONFRONTATION: THE SEARCH FOR BASIC PRINCIPLES, 86 Geo. L.J. 1011, 1042-43 (1998).

In addition to noting that Hubbard had not cited to specific instances in the record where alleged hearsay statements of Keys had been admitted, the Tenth District Court of Appeals held that the state had not sought to introduce "testimonial" hearsay statements from Candace Keys at trial.  Thus, Hubbard's Sixth Amendment right to confront the witness against him had not been violated.[45]  As is explained below, this determination was a reasonable application of *Crawford* and its progeny.

Although, on direct appeal, Hubbard did not cite to the transcript or indicate what hearsay statements were allegedly admitted, he *did* attempt to point this court to the alleged hearsay statements in his response to the return of writ in the present habeas corpus case.[46]  However, after reviewing these statements, the undersigned agrees with the appellate court that none of the alleged hearsay statements was testimonial.   Accordingly, Hubbard has not shown that the state court unreasonably applied federal law or the Supreme Court's opinions related to the Confrontation Clause in the Sixth Amendment.

For example, Hubbard argues that Lavada McCurdy's testimony regarding the facts

---

[45] E.C.F. Doc. 4-19, p. 12
[46] ECF Doc. No. 5, pp. 6-8

surrounding the shootings violated his right to confront his accuser.  Ms. McCurdy testified

generally about the events that were taking place during the shootings.  While Ms. McCurdy did

state that Ms. Keys was crying about her foot, McCurdy also admitted that she had not actually

seen Ms. Keys get shot.[47]  Ms. McCurdy's testimony did not include any testimonial statements

made by Ms. Keys.  Hubbard's attorney was permitted to cross-examine Ms. McCurdy and

Hubbard's Sixth Amendment right to confront his accuser was not violated through the

testimony of Ms. McCurdy.

Hubbard also argues that Seniel Jones and Detective Stephen Glasure, testified

concerning Keys.[48]  A review of the testimony from these witnesses does not reveal the

admission of any testimonial statements of Ms. Keys.  Ms. Jones merely testified as to her

observations.  No Confrontation Clause rights are implicated by Jones stating the observation,

"[A]s we were running, I seen Candace run past me and she started limping.  So she appeared

she got hit in her foot."[49]  She did not testify as to *any* alleged statements made by Ms. Keys, let

alone testimonial statements.[50]  Similarly, Detective Glasure testified to events involved in his

investigation.  He did not relate any alleged testimonial statements made by Ms. Keys during his

testimony at trial; instead, he stated that he spoke to her and "verified" the nature of her injury –

that she had been shot in the foot.[51]

Hubbard also argues that testimonial statements by Ms. Keys were introduced through

the testimony of Dezaray Moore.[52] As part of Ms. Moore's account of the facts that took place on

---

[47] ECF Doc. No. 4-37, p. 171
[48] ECF Doc. No. 5, p. 7
[49] ECF Doc. No. 4-38, pp. 167
[50] ECF Doc. No. 4-38, pp. 154-234
[51] ECF Doc. No. 4-39, pp. 2-17 generally, and 8-9 specifically
[52] ECF Doc. No. 5, pp. 7-8

September 18, 2010, she testified that Ms. Keys said that she had been shot in the foot.[53] Ms. Moore was then asked to identify the shoe that Candace Keys was wearing. While respondent complains that Ms. Moore should not have been permitted to identify this shoe, a review of the transcript shows that the shoe belonged to Ms. Moore and that she had lent it to Ms. Keys on the night of the shootings.[54] Thus, a proper foundation of personal knowledge was established for Ms. Moore to identify the shoe. As with the other trial witnesses, Hubbard had an opportunity to cross-examine Ms. Moore and challenge her testimony related to the events that occurred on September 18, 2010. None of the statements by Ms. Keys that were introduced through the testimony of Ms. Moore was testimonial in nature. As a result the introduction of the statements did not violate Hubbard's right to confront his accuser.

Hubbard relies upon *Crawford v. Washington,* 541 U.S. 36 and *Bullcoming v. New Mexico,* 564 U.S. 647, 131 S.Ct. 2705; 180 L.Ed.2d 610 (2011) in support of his Confrontation Clause argument. However, as discussed above, the Supreme Court's holding in *Crawford* was expressly limited to testimonial hearsay and is not applicable here. *Crawford,* 541 U.S. at 68.

In *Bullcoming,* the Supreme Court held that a report of the defendant's blood alcohol level was testimonial and that the defendant had a right to confront the analyst who prepared the report. *Bullcoming,* 564 U.S. at 656-657. However, no reports of medical or laboratory findings are involved in the present case, and the *Bullcoming* decision does not support Hubbard's argument that testimonial statements made by Ms. Keys were improperly admitted into evidence.

Upon review of the trial transcript, including those portions of the records cited by Hubbard in his response, the undersigned concludes that the state court did not unreasonably apply or arrive at a decision that was contrary to federal law. For this reason, the undersigned

---

[53] ECF Doc. No. 4-38, p. 112
[54] E.C.F. Doc. No. 4-38, pp. 113-114

recommends that Ground One of Hubbard's petition for writ of habeas corpus be DENIED on the merits.

## C.    Grounds Two and Four

In his return of writ, respondent also argues that Grounds Two and Four were not raised on direct appeal and cannot now be raised in state court, thereby resulting in a procedural default of those grounds.[55]  A federal court may not review "contentions of federal law… not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes,* 443 U.S. 72, 87 (1977).    If the State argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule… Second, the court must decide whether the state courts actually enforced the state procedural sanction… Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim… This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate. . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).  Respondent argues that, because Hubbard failed to raise Grounds Two and Four on direct appeal, those claims are now also barred by the doctrine of *res judicata*.  *State v. Perry,* 10 Ohio St.2d 175 (1967).

---

[55] ECF Doc. No. 4, pp. 21-23

In Ground Two, Hubbard argues that he received ineffective assistance of counsel because 1) his attorney did not subpoena Candace Keys, the only living witness/alleged victim, to testify at trial and 2) his attorney did not verify the credentials of the state's expert.  In Ground Four, Hubbard argues that the state prosecutor withheld information that could have been used to impeach Candace Keys, who did not appear or testify at trial.

Neither of these arguments was raised in state court on direct appeal or in Hubbard's application for reopening his direct appeal pursuant to Ohio Appellate Rule 26(B).  For this reason, Hubbard is now barred from raising these arguments in Ohio because he had the previous opportunity to present them during his direct appeal or Appellate Rule 26(B) application and failed to do so, thus waiving these issues under state procedural law.[56]  *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994).  This is an adequate and independent state ground for foreclosure of federal habeas review under the *Maupin* test.  See *Lordi v. Ishee,* 384 F.3d 189,194, 2004 Ohio App.LEXIS 19040 (6th Cir. 2004).  Because Hubbard was required to present these claims to the Ohio courts first to satisfy the exhaustion requirement, but is now barred from doing so by reason of Ohio's procedural rule, the second requirement that the state courts actually enforced the procedural rule is fulfilled.  *Id.,* citing *Coleman v. Thompson,* 501 U.S. 722, 735, 115 L.Ed.2d 640, 111 S.Ct. 2546 (1991).

Because Hubbard failed to raise the issues in Grounds Two and Four in state court, and thereby waived his ability to raise these issues under Ohio law, he is required to demonstrate

---

[56] Claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of res judicata. *State v. Perry,* 10 Ohio St. 2d 175, 226 N.E.2d 104 (1967).  Claims that do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial must be raised in a postconviction action pursuant to R.C. § 2953.21. *State v. Cole,* 2 Ohio St. 3d 112, 2 Ohio B. 661, 443 N.E.2d 169 (1982).  In 1992, a third procedure of review emerged. Claims of ineffective assistance of appellate counsel must be presented to the appellate court in a motion for delayed reconsideration pursuant to Ohio R. App.P.26(B).

both cause and prejudice in order to present these issues in the context of a habeas corpus petition.  *Coleman,* 501 U.S. at 749-750.  This "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule.  Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis of a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under the standard."  *Murray v. Carrier,* 477 U.S. at 488 (1986).  Hubbard has not demonstrated any cause for failing to raise Grounds Two and Four in state court.

Hubbard's only stated reasons for failing to exhaust his remedies on Grounds Two and Four are based on an ineffective assistance of counsel claim.  Ground Two of Hubbard's petition contains the following explanation:

> If you did <u>not</u> raise this issue in your direct appeal, explain why:  <u>Because I used the same trial counsel to do my direct appeal, and no counsel will ever raise ineffectiveness on his or herself.</u>

As to Ground Four, Hubbard states:

> (b)  If you did not exhaust your state remedies on Ground Four, explain why: <u>Trial counsel for whatever his reasons were, refused to bring this information forward during trial.</u>
>
> * * *
>
> (2)  If you did not raise this issue in your direct appeal, explain why:  <u>Counsel for the state never addressed this issue, even after this fact was made known by the defendant to his counsel.</u>

Ineffective assistance of counsel, if independently pleaded and proved, can establish cause for a default.  *Id.; Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  However, if the ineffective assistance of counsel claim is also defaulted, a petitioner must demonstrate cause and

prejudice in order to raise it as well. *Edwards,* 529 U.S. at 453. Hubbard did not raise the issues in Grounds Two and Four in his direct appeal or in his application for delayed appeal pursuant to Appellate Rule 26(B),[57] and he has not demonstrated any cause for failing to do so. *Id.* Moreover, his application to reopen his direct appeal pursuant to Appellate Rule 26(B) was untimely. Thus, Hubbard has defaulted any ineffective assistance of counsel claim in relation to Grounds Two and Four and it may not, therefore, serve as cause for his default on the underlying claims.

Regarding the "prejudice" component, the Supreme Court has indicated that "[t]he habeas petitioner must show not merely that the errors … created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage infecting his entire trial with error of constitutional dimensions. Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial." *Murray,* 477 U.S. at 494. Hubbard has not demonstrated cause or prejudice and the *Maupin* criteria have been satisfied as to Counts Two and Four.

The court is also required to consider whether Hubbard's procedural default on Grounds Two and Four should be excused because the alleged constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Hubbard has not presented any new evidence of actual innocence. There is no basis for excusing his procedural default on Grounds Two and Four of his petition. For these reasons, the undersigned recommends that the Court dismiss Grounds Two and Four of Hubbard's habeas petition as procedurally defaulted.

---

[57] The ineffective assistance of counsel claim raised in Hubbard's Appellate Rule 26(B) application was related to counsel's failure to request jury instructions. Hubbard did not raise the issues involved in Grounds Two and Four in his App. Rule 26(B) application.

**D.**     **Ground Three**

In Ground Three, Hubbard asserts that his Fifth and Fourteenth Amendment rights to due process were violated when the trial court failed to instruct the jury on lesser included offenses.[58] Hubbard raised this argument in Error No. 5 of his direct appeal to the Tenth District Court of Appeals and in his Fourth Proposition of Law to the Ohio Supreme Court.  Respondent argues that Ground Three is procedurally defaulted and alternatively, that it should be denied because it presents a non-cognizable claim.[59]

**1.**     **Applicability of Procedural Default**

Respondent argues that Ground Three of Hubbard's petition is procedurally defaulted for two reasons: 1) because he did not request a lesser included offense jury instruction at the close of trial;[60] and 2) because this argument was found to be procedurally barred by the Ohio court of appeals when it enforced Ohio Appellate Rules 12(A)(2) and 16(A)(7).[61]

Hubbard's attorney did not request lesser offense included jury instructions during the trial.  The court of appeals recognized this stating "[d]efendant failed to timely request an instruction on any lesser-included offense in the trial court."[62]  A petitioner waives an alleged error where he fails to make a contemporaneous objection during trial at the time of the alleged error or errors.  *Osborne v. Ohio,* 495 U.S. 103, 124 (1990).  The court of appeals further noted that, "[a]bsent plain error, a party forfeits error concerning jury instructions if the party fails to

---

[58] ECF Doc. No. 1, pp. 8-10
[59] ECF Doc. No. 4, pp. 23-39
[60] ECF Doc. No. 4, pp. 31-32
[61] ECF Doc. No. 4, pp. 33-35
[62] ECF Doc. No. 4-17, p. 13

object before the jury retires."[63]  The court of appeals then reviewed Hubbard's argument under the plain error doctrine.

In *Scott v. Mitchell,* 209 F.3d 854, 867 (6th Cir. 2000), the Sixth Circuit Court of Appeals held that plain error review by a state appellate court did not preclude a finding of procedural default when the appellate court also invoked a state procedural bar rule as a separate basis for the decision.  In *Scott,* the petitioner argued that his challenge to the penalty-phase jury instructions in his capital case was not procedurally defaulted by Ohio's contemporaneous objection rule.  After applying the *Maupin* test to this challenge, the Sixth Circuit disagreed and held that the challenge *was* procedurally defaulted.  *Scott*, 209 F.3d at 873.  In reaching this conclusion, the court of appeals determined that Ohio's contemporaneous objection rule was an independent and adequate state ground which applied to Scott.  The court also determined that, despite language in its decision referencing a plain error review, the Ohio Supreme Court had applied the contemporaneous objection rule to Scott's challenge.  Finally, the court determined that Scott had failed to show cause and prejudice or that a failure to consider his claims would have resulted in a fundamental miscarriage of justice.  *Id.*

Here, Hubbard failed to request lesser included offense jury instructions, and he did not object to the omission of such jury instructions at trial.  The court of appeals specifically referenced this fact and stated that Hubbard had waived all but plain error review on this issue.  Consequently, the application of the *Maupin* test to Ground Three of Hubbard's petition results in a procedural default unless Hubbard can show cause and prejudice.  *See Scott,* 209 F.3d at 867-68.

The court of appeals also noted that Hubbard's lesser included offense jury instructions argument had to be dismissed because he had not presented any argument to support his that

---

[63] ECF Doc. No. 4-19, p. 13

assignment of error. By not presenting any argument in support of his fifth assignment of error, Hubbard did not comply with App. R. 16(A)(7).[64] Consequently, pursuant to App. R. 12(A)(2), the court of appeals could have disregarded the fifth assignment of error. The court of appeals summarily rejectedmost of defendant's fifth assignment of error on that basis.[65] However, because the court of appeals had encouraged the parties to present oral arguments related to the reckless homicide lesser included offense jury instruction, the court of appeals proceeded to considered defendant's fifth assignment of error.

Upon due consideration, the undersigned concludes that Ground Three of Hubbard's petition should be found to be barred by two distinct state procedural rules: the contemporaneous objection rule and Ohio Appellate Rule 16(A)(7). The state court of appeals enforced the contemporaneous objection rule, limiting its review to the plain error review doctrine. It also enforced Appellate Rule 16(A)(7) with the exception of the reckless homicide lesser included offense instruction. Because the first two prongs of the *Maupin* test have been satisfied, Ground Three of Hubbard's petition should be dismissed unless he can show cause and prejudice. *See Scott,* 209 F.3d at 867-68.

A federal court may consider an otherwise barred claim if the petitioner can demonstrate cause for the default and actual prejudice resulting from the alleged violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 749-750 (1991). This ordinarily turns on "whether the prisoner can show that some objective factor external to the defense impeded his efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Here, apart from a general assertion of ineffective assistance of counsel, Hubbard has not shown that

---

[64] Appellate Rule 16(A)(7) provides that "an appellant shall include in its brief * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions with citations to the authorities, statutes, and parts of the record on which appellant relies."

[65] E.C.F. Doc. No. 4-19, p. 13

an objective factor external to the defense impeded his efforts to comply with the

contemporaneous objection rule or Appellate Rule 16(A)(7).

As stated above, ineffective assistance of counsel, if independently pleaded and proved,

can establish cause for a default.  *Id.; Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

However, if the ineffective assistance of counsel claim is also defaulted, a petitioner must

demonstrate cause and prejudice in order to raise it as well.  *Edwards,* 529 U.S. at 453.  Hubbard

attempted to raise the issue now raised in Ground Three in his application to reopen appeal

pursuant to App. R. 26(B).[66]  However, as stated above, his application was untimely and was

denied on that basis.  Thus, his ineffective assistance of counsel claim was procedurally

defaulted and cannot serve as the basis for showing cause and prejudice on the underlying

procedural default.  *Id.*    Nor has Hubbard demonstrated prejudice by showing that the results of

the proceedings would have been different if the lesser included instructions had been given.

Finally, Hubbard has failed to show that this is an extraordinary habeas corpus case

where a constitutional violation has likely resulted in the conviction of one who is actually

innocent.  In *Schlup v. Delo*, 513 U.S. 298, 314-315, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995),

the Supreme Court held that a habeas petitioner who makes a "colorable showing of factual

innocence" that would implicate a "fundamental miscarriage of justice" may be entitled to have

"otherwise barred constitutional claim[s] considered on the merits."  This exception is concerned

with actual, as opposed to legal, innocence and must be based on reliable evidence not presented

at trial.  *Schlup,* 513 U.S. at 324; *Calderon v. Thompson,* 523 U.S. 538, 559 (1998).  In such

cases, a petitioner must "support his allegations of constitutional error with new reliable evidence

- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence - that was not presented at trial."  *Schlup,* 513 U.S. at 324.  Hubbard has not

---

[66] E.C.F. Doc. No. 4-28, p. 4

argued that he is actually innocent or submitted any new evidence which would support such a contention.  For the reasons stated herein, Ground Three of Hubbard's petition is procedurally defaulted and the undersigned recommends that it be dismissed.

### 2.    Non-Cognizable Claim

In the return of writ, respondent alternatively argues that, even if the court determines that Ground Three is not procedurally defaulted, the trial court's failure to instruct the jury on the lesser included offenses of voluntary manslaughter and reckless homicide did not violate Hubbard's due process rights.  A finding that Ground Three is procedurally defaulted renders unnecessary a determination of whether the claim is cognizable.  Nonetheless, the undersigned concludes that Ground Three only involves the application and interpretations of state law and does not present a federal issue.

Federal habeas corpus relief "does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law.  *See e.g. Wainwright v. Goode,* 464 U.S. 78, 84 (1983).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago,* 809 F.2d 326, 328 (6th Cir. 1987).  "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition.  *Allen,* 845 F.2d at 614, quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985).

While challenges related to jury instructions rarely rise to the level of federal constitutional violations, such challenges may be considered in a federal habeas action if erroneous jury instructions deprived a petitioner of a fundamentally fair trial.  See *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 97 S. Ct. 1730 (1977); *Wood v. Marshall*, 790 F.2d

548, 551-52 (6th Cir. 1986).  To warrant federal habeas corpus relief based on instructions that were allegedly erroneous under state law, a petitioner must demonstrate that the error violated a federal constitutional right and that the instructions "so infected the trial that the resulting conviction violates due process." See *Cupp v. Naughten,* 414 U.S. 141, 146; *Henderson,* 431 U.S. at 15.  Thus, the determination to be made with regard to Ground Three is not whether the trial court's failure to instruct on lesser included offenses was undesirable or erroneous under Ohio law, but whether the jury instructions so infected the entire trial that the resulting conviction violated due process. *Id.*

In *Pilon v. Bordenkircher*, 593 F.2d 264 (6th Cir.), vacated on other grounds, 444 U.S. 1, 62 L. Ed. 2d 1, 100 S. Ct. 7 (1979), the Sixth Circuit held:

> Even if we assume that the failure to give a requested lesser included offense instruction could ever be cognizable in a habeas corpus proceeding, such failure clearly does not rise to the level of constitutional error when the failure was correct as a matter of state law.
>  . . . .
>
> Inasmuch as the highest court of Kentucky expressly held that the state trial court did not err in refusing to give the requested lesser included offense instruction, the refusal was necessarily correct as a matter of state law. It would be an extremely rare case in which a federal court could conclude that a state court committed an error under state law. Indeed, if the case has been reviewed by the state's highest court it would be impossible to find an error of state law if that court did not. (It would be conceivable to find an error of state law if a state trial court ignored clearly controlling precedent -- but we need not decide the question.) It would thus be equally rare for a federal court to be able to grant habeas corpus relief because of an "erroneous" refusal to give a lesser included offense jury instruction.  The issue would instead be whether state law on the matter violated due process.

*Id*. at 267 & n.4.

In *Bagby v. Sowders,* 894 F.2d 792, 795 (6th Cir. 1990), the Sixth Circuit affirmed its holding in *Pilon,* stating further that, "since it is not the function of a federal habeas court to

correct errors in state law, we would not be warranted in setting aside [a] conviction except under the most unusual circumstances.  One circuit court of appeals has said that we should not intervene unless failure to give the instruction amounts to a fundamental miscarriage of justice likely to have resulted in the conviction of an innocent person."  *Id.,* citing *Nichols v. Gagnon*, 710 F.2d 1267, 1269 (7th Cir. 1983), cert. denied, 466 U.S. 940, 80 L. Ed. 2d 465, 104 S. Ct. 1918 (1984).

In considering Hubbard's argument that a jury instruction for the lesser included offense of reckless homicide should have been given to the jury, the Ohio District Court of Appeals stated:

{¶37}  An offense is a lesser-included offense of another where: (1) the offense carries a lesser penalty; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove commission of the lesser offense. *State v. Deem*, 40 Ohio St.3d 205, 209, 533 N.E.2d 294 (1988).  The jury instruction on a lesser included offense must be given when "sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included * * * offense." (Emphasis sic.) *State v. Shane,* 63 Ohio St.3d 630, 632-33, 590 N.E.2d 272 (1992).  Thus, a jury instruction on a lesser-included offense is not required unless the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. *State v. Freeman,* 10th Dist. No. 07AP-337, 2007 Ohio 6859, ¶ 14, citing *State v. Carter,* 89 Ohio St.3d 593, 2000 Ohio 172, 734 N.E.2d 345 (2000).  In making this determination, "[t]he court must view the evidence in the light most favorable to the defendant." *State v. Campbell,* 69 Ohio St.3d 38, 47-48, 1994 Ohio 492, 630 N.E.2d 339 (1994); *State v. Wilkins,* 64 Ohio St.2d 382, 388, 415 N.E.2d 303 (1980).

{¶38}  The offense of reckless homicide provides that "[n]o person shall recklessly cause the death of another." R.C. 2903.041(A).  "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).  Felony murder premised on felonious assault, as defined above, requires that the defendant act knowingly.

{¶39}  Pursuant to the *Deem* test, reckless homicide is a lesser included offense of felony murder because: (1) a felony murder conviction carries a prison term of 15 years to life, while reckless homicide, a third degree felony, carries a maximum prison sentence of three years, see R.C. 2903.041(B), 2929.14(D)(3)(b) and 2929.02(B)(1); (2) one cannot knowingly cause the death of another as the result of committing or attempting to commit a felonious assault without also recklessly causing the death of another; and (3) in order to prove reckless homicide the state need not establish that the defendant acted knowingly. See also *State v. Colvin*, 9th Dist. No. 26063, 2012 Ohio 4914, ¶ 17.

{¶40}  Defendant explained that he fired five warning shots down towards the ground because he had "a burst of adrenaline, scared, * * * it was just a rapid bah, bah, bah, just, you all stop, back up." (Tr. 1206-07.)  Defendant repeatedly stated during his testimony that he did not intend to harm or shoot anyone when he fired his gun.

{¶41}  "However, a defendant's own testimony that he did not intend to kill his victim does not entitle him to a lesser-included offense instruction." *State v. Grube*, 4th Dist. No. 12CA7, 2013 Ohio 692, ¶ 38, 987 N.E.2d 287, citing *State v. Wright*, 4th Dist. No. 01CA2781, 2002 Ohio 1462.  Even though the defendant's own testimony may constitute some evidence supporting a lesser offense, if the evidence on whole does not reasonably support an acquittal on the murder offense and a conviction on a lesser offense, the court should not instruct on the lesser offense. *Id.,* citing *Campbell* at 47; *Shane* at 632-33; *Wright.* "To require an instruction to be given to the jury every time 'some evidence,' however minute, is presented going to a lesser included * * * offense would mean that no trial judge could ever refuse to give an instruction on a lesser included * * * offense." *Shane* at 633.

{¶42}  In *Wright*, the court found the trial court had abused its discretion by refusing to instruct the jury on the lesser-included offense of reckless homicide. The defendant in *Wright* testified that, when his uncle and family friend began to fight, he "shot warning shots toward the embankment" separating the alley from the yard, in an attempt to stop the fight, explaining that he "did not intend to shoot or kill anyone." *Id.* at ¶ 8, 14, 35.  The defendant's testimony, however, "was [not] the only evidence of a lesser intent" because "[a]n independent witness * * * supported [defendant's] testimony" that defendant "was aiming at an embankment when he fired the gun." *Id.* at ¶ 35, 37.  The court also found that "the distance between the recovered bullets and the fact that two to four bullets were never recovered may support an inference that [defendant's] shots were not directed at" the defendant's uncle and friend, who were fighting on the ground. *Id.* at ¶ 37. The court concluded that the record contained "testimony and physical evidence from which a jury could reasonably conclude that Wright acted recklessly, but not purposely." *Id*. at ¶ 37. See also *Grube* at ¶ 42.

35

{¶43}  Unlike *Wright*, in this case, there is no independent testimony or physical evidence to corroborate defendant's statements that he fired warning shots towards the ground.  Fife, the only individual who could see defendant's arm as he was shooting, stated that defendant held his arm straight out in front as he fired towards the group standing in front of 396 Morrison Avenue.  Defendant fired five shots from his gun, and the only bullet recovered by police was the one lodged inside McGrapth's body. Detective Sheppard stated that he instructed the other detectives to search the area between 422 and 396 Morrison Avenue in a "grid search" fashion, but the detectives did not discover any other spent bullets. (Tr. 978.)  The fact that police were unable to recover another bullet from the scene supports the inference that defendant fired towards the group at 396 Morrison Avenue because, if defendant had fired down towards the ground, presumably officers would have found spent bullets in the vicinity of defendant's house or the abandoned house next door.

{¶44}  The coroner testified that the bullet entered McGrapth's body travelling "slightly upward" and fractured McGrapth's second rib and collarbone. (Tr. 801.) The bullet recovered from McGrapth's body was deformed, and on cross-examination, defense counsel asked the coroner if the bullet could have become deformed "from perhaps a ricochet?" (Tr. 814.)  The coroner responded "[i]t would be deformed from hitting a bone," but on further questioning stated it was "possible" that the bullet became deformed by "striking an object before it entered the body." (Tr. 814.) Such equivocal testimony, however, does not support defendant's statement that he was firing at the ground where the evidence demonstrated that defendant fired towards the group of people.

{¶45}  The neighborhood surrounding Morrison Avenue was a populated, urban neighborhood where individuals had been outside fighting with one another throughout the day.  In response to defense counsel's questions, defendant stated that he did not see Bronaugh, McGrapth, or Keys when he fired his weapon. Defendant admitted, however, that when he returned home only moments before the shooting, he saw "a group of people carousing and gathering," on Morrison Avenue, stating "it was a few walking up the street and there was a few in front of my home." (Tr. 1183.)  Fife, who lived at 430 Morrison Avenue, stated that from her "vantage point" she saw "more than eight" people standing in the general vicinity of "either 408 and 412 or 402 and 406" Morrison Avenue. (Tr. 291.)  As Fife could see the group of people standing down the street, and defendant admitted to seeing people out on the street, the jury could only reasonably conclude that defendant would have been able to see the group standing in front of 396 Morrison Avenue when he fired his gun.  The photographs of the incident also indicate that, even if defendant fired in the vicinity of the green trash can in front of the abandoned property next door, defendant was admittedly firing in the direction of the individuals standing in front of 396 Morrison Avenue. (State's exhibit Nos. 86, 33, 34.)  "Shooting a gun in a place where one or more persons risk injury supports an inference defendant acted knowingly." *State v. Whatley,* 10th Dist. No. 95APA10-1375, 1996 Ohio App. LEXIS 1952 (May 14, 1996). See

also *State v. Rawlins,* 4th Dist. No. 97CA2539, 1998 Ohio App. LEXIS 6388 (Dec. 24, 1998).  As such, although defendant's testimony constituted some evidence which could support a conviction on reckless homicide, viewing the totality of the evidence presented at trial, we conclude that the jury could not reasonably have acquitted defendant on the felony murder charge.

{¶46}  The evidence in the case revealed that defendant fired five shots in the direction of a group of people standing down the street from his house, and hit two individuals in the group.  On such facts, the trial court's failure to instruct the jury on reckless homicide did not create a manifest miscarriage of justice, and thus did not rise to the level of plain error.[67]

The Ohio Supreme declined jurisdiction on this issue.[68]  Thus, the state appellate court determined that the trial court had not erred in failing to instruct the jury on a lesser included offense, one which had not even been requested by defendant.  As indicated by the Sixth Circuit in *Bagby*, it would be a most unusual circumstance where this court would determine that the failure of a state court to give an instruction amounted to a miscarriage of justice.  The undersigned concludes that, in failing to provide an unrequested jury instruction on a lesser included offense, the state court did not violate Hubbard's due process rights.  Hubbard has not shown that these jury instructions violated any federal constitutional right.  For this reason, in addition to being procedurally defaulted, Ground Three fails to present a federal issue cognizable in § 2254 habeas proceedings.  *Bagby v. Sowders*, 894 F.2d at 796-7 (6th Cir. Ky. 1990).   The undersigned recommends that the court DENY Ground Three of Hubbard's petition.

## VI.    Recommendation Regarding Certificate of Appealability

### A.    Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of

---

[67] ECF Doc. No. 4-19
[68] ECF Doc. No. 4-23

habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'"  *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.      Analysis

As to Ground One, Hubbard failed to make a substantial showing of the denial of a constitutional right.  He did not point to the admission of any testimonial statements made by Ms. Keys in violation of his Sixth Amendment right of confrontation.

As to Grounds Two, Three and Four, when a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted." *Id*. at 486.

If the Court accepts the foregoing recommendation, Hubbard cannot show that the Court's rulings on the procedural defaults of Grounds Two through Four are questionable. Ground One of Hubbard's petition lacks merit and Grounds Two, Three and Four are procedurally defaulted.  Thus, the Court should conclude that Hubbard is not entitled to a certificate of appealability in this case.

## VII.    Conclusion

For the reasons stated above, the undersigned recommends that the court DENY a writ of habeas corpus on  each of the grounds asserted in Hubbard's petition under 28 U.S.C. § 2254.

39

Dated: September 7, 2016

Thomas M. Parker
United States Magistrate Judge

_____

## VIII.  Notice to Parties Regarding Objections:

Local Rule 73.2 provides:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file specific objections constitutes a waiver of any further right of appeal.

*Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).